IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Midwest Motor Supply Company,    :
Inc. dba Kimball Midwest,
                                 :
        Plaintiff,
                                 :
    v.                             Case No. 2:05-cv-0733
                                 :
Alan F. Addis,                     JUDGE SMITH
                                 :
        Defendant.

OPINION AND ORDER

    Plaintiff, Midwest Motor Supply Company, Inc., dba Kimball
Midwest (Kimball Midwest), filed this action against one of its
former sales representatives, Alan F. Addis, seeking to enforce a
restrictive employment covenant and to prevent Mr. Addis from
disclosing trade secrets or engaging in unfair competition while
employed by one of Kimball Midwest's competitors.  After the
complaint was filed in the Franklin County Court of Common Pleas,
it was removed to this Court on the basis of diversity of
citizenship.  Kimball Midwest, while not disputing that it is an
Ohio resident and that Mr. Addis resides in California, contends
that removal is improper because the $75,000 amount in
controversy requirement of 28 U.S.C. §1332(a) has not been
satisfied.  Because Kimball Midwest's motion to remand raises a
threshold issue of the Court's subject matter jurisdiction, the
Court must dispose of that motion before turning its attention to
any of the other motions filed by the parties, which include a
motion to transfer the case to the Eastern District of California
and a motion to dismiss and for a more definite statement.  For
the following reasons, the motion to remand will be granted.

                    I.

    Because the allegations of the complaint play a major role

in the Court's determination of whether the amount in controversy requirement has been satisfied, it is helpful to recite in some detail the claims set forth in the complaint and the dollar values which Kimball Midwest has assigned to those claims.

As noted above, the general nature of the case involves Mr. Addis' decision to terminate his employment with Kimball Midwest and go to work for one of its competitors. Kimball Midwest asserts that he made this decision even while in its employ, and, in fact, diverted customers away from it while still on its payroll. Mr. Addis had a restrictive covenant in his employment agreement which Kimball Midwest also seeks to enforce. If the restrictive covenant is enforceable as written, Mr. Addis would be prohibited from selling or attempting to sell competitive products to Kimball Midwest's customers for two years following the termination of his employment.

The complaint sets forth the following legal theories: breach of contract (Count One), unfair competition and tortious interference with business relationships (Count Two), unfair competition, breach of fiduciary duty and the duty of loyalty (Count Three), conversion (Count Four), misappropriation of trade secrets (Count Five), and fraud (Count Six). All of the claims are pleaded as common law causes of action, and no statutory claims appear in the complaint.

At the end of each cause of action, Kimball Midwest pleads that it has been damaged by Mr. Addis' actions in an amount which, in the aggregate, exceeds $25,000 but is less than $75,000. In the prayer for relief, Kimball Midwest asks for a preliminary and permanent injunction which would both enforce the terms of the employment agreement and prevent Mr. Addis from using or disclosing trade secrets or other confidential information, and it asks for a damage award of between $25,000 and $75,000. The complaint also prays for punitive damages to be

2

awarded on the intentional tort claims and asks for attorneys'
fees. The request for attorneys' fees, however, recites that the
total aggregate of damages, punitive damages, costs, and
attorneys' fees is less than $75,000. Complaint, Prayer for
Relief, ¶ 6.

There is little additional evidence relating to the amount
in controversy issue presented with the motion to remand. One of
the exhibits submitted by Mr. Addis is a memo written to him by
Kimball Midwest dated February 16, 2005, which appears to
indicate that Mr. Addis's sales in calendar year 2003 were
$225,146 and in 2004 were $246,199. A substantial percentage of
those sales were apparently generated from what Kimball Midwest
described as "Bay area accounts," which, according to the
memorandum, were accounts which were going to be transitioned to
other Kimball Midwest sales representatives because Mr. Addis was
moving to a different part of California and would no longer
service those accounts. Apparently, over the last eight months
of 2004, he created 13 new accounts in that area which produced
$3,200 in sales. He was also given approximately $50,000 in
business in the area upon which he could build. The record is
silent as to which portion of these various accounts Mr. Addis is
allegedly attempting to convert to his new employer. The only
other evidence concerning the dollar value of any part of Mr.
Addis' work for Kimball Midwest is a statement in paragraph five
of his affidavit that he earned $42,377 from Kimball Midwest in
calendar year 2004. That apparently does not represent a full
year's compensation because he suffered a stroke in November,
2004 and was unable to work for some part of that calendar year.

II.

When a complaint is filed initially in federal court, and a
question arises about whether the amount in controversy
requirement of 28 U.S.C. §1332(a) has been satisfied, the Court

3

is required to accept that the amount claimed by a plaintiff is the amount actually in controversy "unless it appears to a legal certainty that the claim is for less than the jurisdictional amount." Rosen v. Chrysler Corp., 205 F.3d 918, 921 (6th Cir. 2000), citing, inter alia, St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283 (1938). However, when the case is removed from state court, the defendant, as the removing party, bears the burden of demonstrating that the Court's jurisdiction is properly invoked. Gafford v. General Electric Co., 997 F.2d 150, 155 (6th Cir. 1993). If the plaintiff, in the state court complaint, has pleaded an amount in controversy that exceeds the statutory requirement, following St. Paul, the Court should assume that the jurisdictional requirement has been satisfied unless, again, it appears to a legal certainty that the plaintiff cannot recover the required amount. Gafford, supra, at 157. However, when the amount in controversy is not clearly set forth in the state court complaint, it is the defendant's burden to demonstrate by a preponderance of the evidence that the jurisdictional requirement has been satisfied. Gafford, supra, at 158; see also Crosby v. American Online, 967 F. Supp 257, 260-61 (N.D. Ohio 1997); Long v. McKesson HBOC Redline Healthcare, 2002 WL 1578840 (S.D. Ohio April 26, 2002). The defendant does not, however, have to prove the plaintiff's damages at this stage of the case, but rather may satisfy the burden if a fair reading of the complaint and other evidence of record shows that the amount in controversy exceeds $75,000. See Hayes v. Equitable Energy Resources Co., 266 F.3d 560 (6th Cir. 2001).

The Court begins its inquiry with an analysis of Kimball Midwest's compensatory damage claim. For the following reasons, the Court finds that Mr. Addis has not met his burden of demonstrating that the compensatory damages which might be recoverable in this case exceed $75,000.

4

First, the complaint clearly pleads a claim for compensatory damages of less than that amount.  Thus, a fair reading of the complaint does not reveal that the amount in controversy requirement has been satisfied.   Second, the small amount of additional information concerning the sales volume attributed to Mr. Addis in prior calendar years, when he was apparently servicing other accounts, sheds little or no light on the extent to which Kimball Midwest might be damaged by his alleged defection to a competitor.  It is simply not clear that he would be calling on the same accounts which produced a substantial number of sales in 2003 and 2004, nor is it clear what profit Kimball Midwest either realized from those prior sales or might fail to realize as a result of Mr. Addis' alleged breach of his contractual duty not to compete or his disclosure of confidential business information to Kimball Midwest's competitor.  On this record, it would be nothing more than speculation to conclude that Kimball Midwest could recover a compensatory damage award which would exceed $75,000.

Other cases which have considered similar claims support the Court's analysis.  For example, the Eighth Circuit Court of Appeals, in Federated Mut. Implement & Hardware v. Steinheider, 268 F.2d 734, 736 (1959), also a restrictive covenant case, noted that "the [defendant's] gross...income...affords no means from which the court could determine the extent to which the plaintiff's business is being affected by the defendant's proscribed competing activities."  Rather, as here, the employer's damages are measured not by the employee's income or sales volume, but by the employer's profits, about which the record is silent.  Even if some basis for estimating that profit exists (and the record really needs to be developed on that issue to prevent speculation, see Miller v. Maverick Country Stores, 72 Fed. Appx. 582 (9th Cir. 2003)), the level of sales which Mr.

Addis might make to Kimball Midwest's customers does not suggest an amount in controversy in excess of $75,000. See, e.g., Basicomputer v. Scott, 973 F.2d 507 (6th Cir. 1992) (restrictive covenant might have a value of ten percent of gross sales volume of former employee). Thus, the compensatory damage claim does not appear to be more likely than not worth more than $75,000.

Kimball Midwest has also requested punitive damages, and has pleaded at least one cause of action, and perhaps several, on which punitive damages could be awarded. Such damages must be considered in determining whether the amount in controversy requirement has been satisfied. Hayes, supra, at 572.

Evaluating a plaintiff's claim for punitive damages, however, is done in the same way as the claim for compensatory damages. In a removal situation, the defendant must show from either a fair reading of the complaint or through other evidence that the punitive damage claim could, coupled with the compensatory damage claim and any other allowable items, exceed $75,000.

Here, the state court complaint alleges that all countable items, including punitive damages, do not exceed $75,000 in the aggregate. As noted above, it is very difficult to determine what amount of compensatory damages Kimball Midwest might be entitled to, and the Court cannot say that it is more likely than not that such damages would exceed $75,000. Punitive damages are measured in part by their relationship to the compensatory damage award. Where the latter are uncertain in amount, so, necessarily, are the former. Further, punitive damages are measured in part by the net worth of the defendant. The Court has no evidence before it on that issue. Finally, the Court cannot evaluate the likelihood of a punitive damage award because there is no evidence concerning the strength of Kimball Midwest's claims, including those claims on which a punitive damages award

6

might be made.  Under all of these circumstances, the Court concludes that Mr. Addis has not made the requisite showing.  See Beichler v. City Group, 241 F.Supp. 2d 696 (S.D. Miss. 2003) (the defendant must produce some evidence on the likely amount of punitive damages); McDonough v. Crum & Forster Personal Ins., 1992 WL 114951, *2 (E.D. Pa. May 20, 1992) ("[d]efendant does not meet its burden by merely stating a conclusion, insupportable on the record, that the amount in controversy exceeds the jurisdictional amount").

Next, Kimball Midwest has asked for an injunction to enforce the restrictive covenant.  A separate claim for injunctive relief can also add to the value of the suit for jurisdictional purposes.  Pennsylvania R. Co. v. City of Girard, 210 F.2d 437 (6th Cir. 1954).  In valuing injunctive relief for jurisdictional purposes, however, the Court's focus is on the economic value of the rights which the plaintiff seeks to protect through injunctive relief rather than upon the economic cost to the defendant if an injunction were granted.  Buckeye Recylers v. CHEP USA, 228 F.Supp. 818 (S.D. Ohio 2002).

Here, the value of an injunction enforcing Mr. Addis' restrictive covenant is conceptually similar to the amount of damages which Kimball Midwest would suffer if the covenant were not enforced.  From Kimball Midwest's point of view, if damages from Mr. Addis's alleged breach of contract or misuse of confidential information could be accurately assessed, Kimball Midwest could be made whole either by an award of that precise amount of damage or, alternatively, an injunction the effect of which would be to prohibit Mr. Addis from engaging in that conduct and therefore causing Kimball Midwest to experience that economic loss.  Thus, in the specific context of this case, the Court believes that the compensatory damage claim and the injunctive relief claim are essentially an either/or remedy.  It

7

follows that if it cannot be said to the requisite level of likelihood that compensatory damages will exceed $75,000, neither can it be said that the value of an injunction to Kimball Midwest exceeds $75,000.

Finally, the Court turns to the issue of attorneys' fees. Although the complaint contains a prayer for attorneys' fees (and also recites that the aggregate of attorneys' fees and other damages does not exceed $75,000), the prevailing rule appears to be that attorneys' fees are not counted for purposes of the amount in controversy requirement unless such fees are expressly available under statute or contract with respect to the causes of action pleaded in the complaint. See Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167 (6th Cir. 1975); see also Floret v. Southern Farm Bureau Life Ins. Co., 918 F.2d 534, 536 (5th Cir. 1991). Thus, "[t]he law is now quite settled...that the amount expended for attorney's fees are a part of the matter in controversy for subject matter jurisdiction purposes when they are provided for by contract or state statute...." 14B C. Wright & A. Miller, Federal Practice and Procedure, §3712 (2005). Because none of the causes of action contained in Kimball Midwest's complaint assert a claim for attorneys' fees under either contract or state statute, any amount attributable to attorneys' fees cannot be taken into account in order to determine whether the $75,000 amount in controversy requirement has been satisfied. Because the record does not demonstrate that the aggregate value of the other items countable for jurisdictional purposes - compensatory damages, punitive damages, and injunctive relief - likely exceeds $75,000, the Court does not have jurisdiction over this dispute, and removal of the case was improper.

IV.

Based upon the foregoing, the Court concludes that the

8

defendant has not met his burden to demonstrate by a preponderance of the evidence that the amount in controversy requirement of 28 U.S.C. §1332(a) has been satisfied.  That being so, plaintiff Midwest Motor Supply Co., Inc. dba Kimball Midwest's motion to remand (#6) is GRANTED.  The Court determines that attorney's fees should not be awarded under 28 U.S.C. §1447(c) because the removal was sufficiently reasonable to preclude such an award.  See Martin v. Franklin Capital Corp., ___ S.Ct. ___, 2005 WL 3299410 (December 7, 2005).  This action is REMANDED to the Court of Common Pleas of Franklin County, Ohio.


/s/ George C. Smith
George C. Smith
United States District Judge

9